**BLAIR COUNTY.**

JULY TERM, 1883, No. 80. OCTOBER 6, 1884.

## Pennsylvania Railroad Company *v.* Friday.

A railroad company having constructed a stone culvert under its road-bed upon the upper side of land owned by an individual, through which the surface-water was emptied upon it from the land above, paid to the said owner $100, and obtained a release from him, reciting that he claimed damages "by reason of the overflow of my said lands caused by a culvert, &c.," and that the company was to pay $100 for all damages, past and future, "sustained for or by reason of the overflow of my lands from the cause aforementioned;" releasing the said company

[Pennsylvania Railroad Company *v.* Friday.]

from all claims, damages, &c., "for or by reason of the overflow of my said lands from the cause aforesaid mentioned," either at any time before or after the date thereof; and concluding that it was to operate as a full discharge for all past and future damages "sustained under any circumstances for the cause aforementioned, or for or by reason of any other matter, cause or thing touching or concerning the same." The railroad company, several years afterwards, constructed seven additional drains causing the water to overflow the land in seven additional places, and consequently additional damage to the land. *Held*, that since the *overflow* or *flooding*, and not the *culvert*, was the occasion of the damage, the words "the cause aforementioned" refer to the substance of the injury, and not to the channel through which the injury was inflicted; and that, therefore, there could be no recovery for the damage caused by additional overflow or flooding.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas of *Blair County*.
Case by Conrad Friday against the Pennsylvania Railroad Company.

On the trial in the court below, before DEAN, P. J., the following facts appeared:

Conrad Friday, the plaintiff, was the owner of a farm, which was purchased by him in April, 1861, containing thirty-one acres, and situated about five miles from Tyrone, on the eastern slope of the Allegheny mountain, in Snyder township, Blair county. At the time of this purchase, the Tyrone and Clearfield railroad had been located. The road was afterwards completed, and ran upon the south-west side of this land for a distance of two thousand seven hundred and forty feet. The land, which was used as a farm, consisted of a long narrow strip on the lower or north-east side of the road. From the natural formation of the land, being on the slope of the mountain, there was an extensive water-shed to the south-west of it, from which, before the railroad was built, the surface-water flowed upon plaintiff's land.

About the time of the construction of the railroad, a stone culvert, two feet square, was constructed by the railroad company under the road-bed, and the surface-water, flowing down the mountain, was collected in a small artificial chamber on the upper side of the railroad, and, being conducted along this channel, was discharged through the culvert upon the plaintiff's land below. After complaints by plaintiff, the Pennsylvania Railroad Company, then operating under the charter of the Tyrone and Clearfield Railroad Company, paid to the plaintiff $100, on December 14, 1876, and took from him the following release:

[Pennsylvania Railroad Company *v.* Friday.]

"Know all men by these presents, That, whereas, I, Conrad Friday, of the township of Snyder, in the county of Blair, and State of Pennsylvania, am seized in fee of a tract or piece of land in the township, county, and State aforesaid, situate, lying, and being on east side of the Tyrone and Clearfield railroad; and, whereas, I have made a claim for damages against the Pennsylvania Railroad Company operating the Tyrone and Clearfield railroad, for and by reason of the overflow of my said lands caused by a culvert under the said Tyrone and Clearfield railroad, about two miles from Vail station, on said railroad, which said culvert discharges the water from an extensive water-shed on the west side of the said railroad, the water being collected from said water-shed in a small artificial channel on the west side of said railroad, and being conducted along said channel a considerable distance, and discharged through said culvert upon my said lands, overflowing said lands and damaging the same; and, whereas, it has been agreed between the Pennsylvania Railroad Company and me that said company shall pay me the sum of $100, in full satisfaction for all damages which I have sustained or which I may hereafter sustain for or by reason of the overflow of my lands from the cause aforementioned. Now, I, the said Conrad Friday, in consideration of the sum of one hundred dollars to me in hand paid by the said, the Pennsylvania Railroad Company, the receipt whereof is hereby acknowledged, have remised, released, quit-claimed and forever discharged, and by these presents do remise, release, quit-claim, and forever discharge, for myself, my heirs, executors, administrators, and assigns, the said, the Pennsylvania Railroad Company, its successors and assigns, of and from all and all manner of action and actions, cause and causes of action and actions, suits, sum and sums of money, claims, demands, and damages whatsoever, in law, equity, or otherwise, for or by reason of the overflow of my said lands from the cause aforementioned, either at any time before the date of these presents or at any time after the date hereof, this release to operate as a full and complete satisfaction and discharge for all damages that have been heretofore sustained, or that may at any time hereafter be sustained under any circumstances from the cause aforementioned, or for or by reason of any other matter, cause, or thing touching or concerning the same. In witness, &c., &c., December 14, 1876."

The plaintiff cleared his land, cultivated it, raised crops,

and erected a house and barn at an expense of about $1,500.

For the purpose of protecting the road-bed, the railroad company, in 1878, constructed seven wooden box-drains under the road-bed, the effect of which was to discharge the water over plaintiff's land in seven additional places, the force of the water carrying with it and depositing upon the land quantities of cinder, ballast, &c., cutting gullies into the land, and washing away seed and growing crops. In some places, the water lay on the ground, soaked in, and the sun baked the soil hard.

A number of witnesses testified as to the yearly and as to the permanent damage to the crops and the land.

Defendant's counsel presented to the court the following points for charge, which, with the answers thereto, are as follows:

*First.* The complaint in this action being that the water was discharged through culverts, or box-drains, upon the land of the plaintiff below the railroad to his injury, the remedy is not by a common law action on the case, but the exclusive remedy is that provided by the act of Assembly for the assessment of damages, and this action, therefore, cannot be maintained.

*Answer.* We would have no hesitation in affirming this point if the statutory remedy had been adopted by either party at the time the road was laid out and constructed; but the evidence does not show that the method pointed out by the act of Assembly for ascertaining damages was ever invoked. This being the case, we are not now prepared to affirm the point, and therefore reserve it.

*Second.* The alleged injury results from the construction of culverts, or box-drains, made for the purpose of draining surface-water accumulating or flowing upon the lands west of the railroad, and the defendant is not liable therefor; the defendants had a right to drain the surface-water from the land above their road in order to protect their road-bed, and they are not answerable for damages arising therefrom.

*Answer.* This point is denied. It might have been stated so as to leave the facts to you, in which case we should have affirmed it; but, as stated, it is not affirmed.

*Third.* The release executed by the plaintiff, on the 14th of December, 1876, is a bar to this action.

*Answer.* This point is denied; and as to our construction of that release, it is the legal construction so far as this case is concerned, the law making it the duty of the Court to construe legal papers.

[Pennsylvania Railroad Company *v.* Friday.]

*Fourth.* On the whole case, the jury are instructed to find for the defendant.

*Answer.* This point is denied. It is not the law. We have submitted the case to you on the evidence, and you are to make up your verdict under the instructions we have given you.

Defendant's counsel excepted to the answers to the above points.

May 4, 1882. Verdict for plaintiff for $550.

Upon a motion for a new trial, the defendant's first point was denied, and judgment was entered on the verdict.

Defendant then took out a writ of error, and assigned as error the answers to the points of charge, and the refusal to enter judgment in favor of the defendant on the point reserved.

*D. J. Neff* for plaintiff in error.

The exclusive remedy for the injury complained of in this action is that provided by statute of 19th February, 1849, for the assessment of damages, which authorizes compensation for damages purely consequential: Hoffer *v.* Canal Company, 6 Norris, 221; Railway Company *v.* Gilleland, 6 P. F. Sm., 449; Canal Company *v.* Hill, 6 W. N. C., 182; Walker *v.* Railway Company, 103 Mass., 10; Pierce on Railroads, (Ed., 1881,) 177, 178; Mills on Eminent Domain, sec. 87, 89; McKinney *v.* Navigation Company, 2 Harris, 65; Koch *v.* Water Company, 15 P. F. Sm., 288; Stump's Appeal, 38 Leg. Int., 1881, p. 205. Hare *v.* Com'th, 8 W. N. C., 121; Gordon *v.* R. R. Co., 6 *Id.*, 405; White *v.* McKeesport, 40 Leg. Int., 90.

The right to construct the drains to vent the surface-water implies the right to change the flow of the water: R. R. Co. *v.* Young, 9 Casey, 175.

The company has a right to protect its road-bed against the surface-water by drains, although thereby distributing it upon the land below in a different manner from the way it had been wont to flow: Mills on Eminent Domain, sec. 189; Pierce on Railroads, 205; Hosher *v.* R. R. Co., 60 Mo., 329; Munkers *v.* R. R. Co., *Id.*, 334; Waffle *v.* R. R. Co., 53 N. Y., 11.

The release was sufficiently comprehensive to embrace all damages arising from discharge of surface-water upon the land.

*Speer & McMurtrie* and *A. A. Stevens* for defendant in error.

[Pennsylvania Railroad Company v. Friday.]

No exception was taken to the judgment of the court upon the point reserved, and it is therefore not before this court: Allen v. Laird, 40 Leg. Int., 425; Bank v. Lefever, 24 P. F. Sm., 49; Merkel v. Berks County, 32 P. F. Sm., 505.

The road was built in 1861 or 1862. The box-drains were not put in until 1878. Therefore, the statutory remedy, provided by the act of 19th February, 1849, could not be invoked. Act of 17th April, 1866, limits the application of the remedy to five years after entry, and to three years after the road shall be in operation: Constitution of 1838, sec. 4, art. 7; Bill of Rights, sec. 10; Constitution of 1874, sec. 8, art. 16; Bill of Rights, sec. 10; act of 1849, 2 Purd. Dig., 1218, sec. 34.

Harrisburg v. Crangle, 3 W. & S., 464; Brown v. Powell, 1 Casey, 229; 1 Redfield's Law of Railways, 3d Ed., 337; U. S. v. Arredondo, 6 Peters, 691, 738; Hatch v. Railway, 25 Vt., 49; Redfield's Am. Railway Cases, 302.

The owner's right to damages for the trespass is a vested right of which he cannot be deprived: McClinton v. R. R. Co., 16 P. F. Sm., 404; Dimmick v. Brodhead, 25 P. F. Sm., 464; Fries v. R. R. Co., 4 Norris, 73; R. R. Co. v. Johnston, 9 P. F. Sm., 291.

Under Constitution of 1838, corporations are made liable for damages resulting to private property for the construction, use, or alteration of their works, &c.: Pusey v. Allegheny, 2 Out., 522; Reading v. Althouse, 12 Norris, 400; R. R. Co. v. Bruce, 12 W. N. C., 554; Duncan v. R. R. Co., 7 W. N. C., 551; Malone v. City, 12 W. N. C., 396; Gordon v. R. R. Co., 6 Id., 405.

The argument as to the right of the company to protect its road-bed by drains, although distributing the water on the land below in a different manner, is not supported by authority. Pierce on Railroads, 205, says "that this doctrine is not accepted in several States."

Kauffman v. Griesemer, 2 Casey, 407; Martin v. Riddle, 2 Casey, 415; Miller v. Laubach, 11 Wr., 154; Pastorius v. Fisher, 1 Rawle, 27; Ripka v. Sergeant, 7 W. & S., 12; Bentz v. Armstrong, 8 W. & S., 40; Gordon v. R. R. Co., 6 W. N. C., 405; Dickinson v. Worcester, 7 Allen, 19; White v. Chapin, 12 Allen, 516; Butler v. Peck, 16 Ohio St., 334; Tillotson v. Smith, 32 N. H., 90; Angell on Water Courses, sec. 108.

The release was not admissible unless specially pleaded: Gilchrist v. Bole, 8 Watts, 358; Johnson v. Kerr, 1 S. & R., 25; Holt v. Bodey, 6 Harris, 207.

The release recites that the overflow was *caused by a*

*culvert* under the railroad, and releases all damages *for the cause aforementioned.* When there is a particular recital in a deed and then general words follow, the general words are qualified by the particular recital: Bacon's Abr., Release K. The words of a release are not to be extended beyond the consideration for which it was given: Rapp *v.* Rapp, 6 Barr, 45; McLarren *v.* Robertson, 8 Harris, 125; Robeson *v.* Navigation Co., 3 Gr., 190; Cottrell's Est., 2 W. N. C., 83; R. R. Co. *v.* Johnson, 7 W. & S., 317; Pierce *v.* Sweet, 9 Casey, 151; McLenachan *v.* Com'th, 1 Rawle, 356; Ege's Appeal, 3 Watts, 495.

October 6, 1884, the opinion of the Court was delivered by GREEN, J.:

We think the learned court below was in error in the construction of the release given by the plaintiff. The cause of action was the damage done by flooding the plaintiff's land with water discharged through several drains under the bed of the defendant's road. The water, which accumulated over a widely spread surface above the road, was formerly discharged through a single artificial channel or culvert upon the plaintiff's land. This was from the time the road was built, in 1861, and the plaintiff complained frequently of the injury, until 1876, when his claim for damages was settled and a sum of one hundred dollars was paid him and a formal release executed. It was contended for the defendant that this release was a bar to the present claim, as it included future as well as past damages. The release was given in 1876, and in 1878 the defendant opened several additional small drains under the road bed, so that thereafter water was discharged through all the drains, instead of through the one which was in existence when the release was given. It was contended by the plaintiff, and held by the court below, that the release operated only upon the claim for damage done by the flow through the culvert, and therefore the plaintiff might recover for flowing water through the other drains. If the words of the release had been confined to the injury done by the water which flowed through the culvert, this contention and ruling would have been correct. But the language of the release is, as it seems to us, much broader than this. The instrument recites that the plaintiff held a claim for damages for discharging water from an extensive water-shed on the west side of the railroad, through a culvert under the road, and that it was agreed between him and the company that he should be paid one hundred dollars in

full satisfaction for all damages which the plaintiff had sustained, or might thereafter sustain, for or by reason of the overflow of his lands "from the cause aforemention-ed." Then follow the clauses of the release discharging the defendant from all claim for damages for, or by reason of, the overflow "from the cause aforementioned," either at any time before or after the date of the release, and concluding thus : "This release to operate as a full and complete satisfaction and discharge for all damages that have been heretofore sustained, or that may at any time hereafter be sustained, under any circumstances, from the cause aforementioned, or for or by reason of any other matter, cause, or thing touching or concerning the same." It is contended that the words "from the cause aforementioned," limit the injury covered by the release to that which was occasioned by means of the culvert. There is plausibility in the argument, growing out of the collocation and incorrect use of the words in the earlier portion of the reciting clause of the release. In describ-ing the claim for damages, the paper states it as being "for and by reason of the overflow of my said lands *caused* by a culvert under the said Tyrone and Clearfield railroad," &c., &c. It is certainly not the *culvert* that caused the plaintiff's injury, but the flowing of water upon his land, and this flooding is the *gravamen* or im-mediate and direct occasion of the damage suffered by the plaintiff, as indeed appears by the remainder of the reciting clause. When, therefore, the words "the cause aforementioned" are repeated in the subsequent parts of the release, we must refer them to the substance of the injury complained of, rather than to the mere channel or vehicle through which the injury was inflicted. Thus read, the instrument means that the damage done to the plaintiff's land by casting upon it the water gathered from the water-shed above the railroad was liquidated and discharged, both for the past and the future, by the release in question. This view is confirmed by the words "under any circumstances," which appear in the conclud-ing or releasing clause. They can only have significance by reading them as covering the flooding of the plaintiff's land by discharging upon it the water from above the railroad in any manner, under any circumstances. If they are to be limited to a flooding through the culvert, they have no meaning which affects the operation of the instrument as a release. It would read precisely the same if they were omitted. If there were any doubt as to the true meaning of the paper, it would be resolved

[Hall *v.* Coburn.]

against the plaintiff, on the principle that the words of a deed or grant, in cases of doubt, are to be construed most strongly against the grantor, but we think there is no doubt about it, and that the legal and necessary interpretation of the instrument is as we have stated it. These being our views of the case, the third and fourth assignments of error are sustained, and on them

The judgment is reversed

TRUNKEY, STERRETT, and CLARK, JJ., dissent.